## Michael Z. SMITH, Plaintiff-Appellant

v.

IRON COUNTY, a governmental entity and municipal corporation; Ira Schoppman, Iron County Sheriff; Gary Shatzer, and Jack Miller, Defendants-Appellees.

No. 81–1195.

United States Court of Appeals, Tenth Circuit.

Oct. 18, 1982.

Rehearing Denied Dec. 2, 1982.

Brian M. Barnard, Salt Lake City, Utah (Kerry Eagan and John B. Maycock, Salt Lake City, Utah, with him on the brief), for plaintiff-appellant.

Gary B. Ferguson, Richards, Brandt, Miller & Nelson, Salt Lake City, Utah, for defendants-appellees.

Before SETH, Chief Judge, DOYLE, Circuit Judge, and BOHANON,* District Judge.

WILLIAM E. DOYLE, Circuit Judge.

The action here arose in the United States District Court for the District of Utah. It was brought pursuant to 42 U.S.C. § 1983 against Iron County and various officials. The appeal is from the district court's final order granting defendants' motion for summary judgment.

Plaintiff was a detainee-prisoner in the jail at Cedar City in Iron County, Utah. He was awaiting disposition of a burglary charge which had been filed against him. On January 3, 1979, Gary Shatzer, who was the jailer on duty, heard a banging noise coming from the vicinity of the plaintiff's cell. He had some difficulty locating the sound, but when he did he saw the plaintiff on the floor of the cell under a bunk. Shatzer asked him what he was doing, and he responded that he was not doing anything. After inquiring further and not being able to obtain an answer, Shatzer told plaintiff that he would be forced to use mace if he did not give him whatever object was being

---

* The Honorable Luther L. Bohanon, United States Senior District Judge for the Eastern District of Oklahoma, sitting by designation.

used to make the noise. Plaintiff continued to deny that he was doing anything.

Shatzer, after talking to the plaintiff further without success, obtained a can of mace from his office, and after giving the plaintiff a final chance to cooperate, sprayed plaintiff through the bars of the cell. There is some dispute as to how much mace was sprayed. Plaintiff states that he was initially sprayed in the face for approximately two minutes, and again for three minutes in the back of the head when he refused to respond to another question. Shatzer's testimony is that he sprayed plaintiff for a second and a half on the back of plaintiff's head and shoulders.

A short time after the mace was sprayed one of the other men in plaintiff's cell gave Shatzer the object that he had been seeking. This was a six pound iron drain cover with a jagged edge. Plaintiff had been using the drain cover to pound a hole in the cell wall. After the incident, Shatzer made the following entry in a jail log book: " * * * He wouldn't tell me what he was using so I gave him a couple of squirts of mace. Still wouldn't tell me but at least he is suffering."

Both plaintiff and the defendants moved for summary judgment. The district court granted summary judgment as to all defendants, and denied plaintiff's motion. The basis for the ruling was that the conduct as established by the undisputed facts before the court did not amount to a violation of plaintiff's constitutional rights, especially plaintiff's right to be free from cruel and unusual punishment, and his right to be free from deprivation of life, liberty, or property without due process of law.

Plaintiff's theory of the case here reflects his contention that use of mace by defendant Shatzer amounted to punishment of a pretrial detainee in violation of the due process clause of the Fourteenth Amendment of the Constitution of the United States. He maintains in addition that the macing incident amounted to cruel and unusual punishment in violation of the Eighth Amendment of the Federal Constitution. Finally, plaintiff argues that if the incident is found to violate his due process and Eighth Amendment rights, the Sheriff of the Iron County Jail and the County itself are also liable for damages. Plaintiff asserts that the Sheriff is liable on the theory that he was on notice of this and other acts of the jailers and he also inadequately trained his subordinates. It is further contended that the County also was liable under *Monell v. New York City Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); and *Owen v. City of Independence,* 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980), due to the Sheriff's failure to establish rules regulating punishment and the use of force at the jail. We need not decide whether the Sheriff or the County are liable, because in our judgment the ruling of the district court was correct and should be affirmed.

At the time that this happened, Shatzer was the only person on duty in the jail. He had had previous difficulty with Smith, and in view of the fact that he was by himself, and there were two prisoners in the cell, he could not go inside without running the risk of having both of the prisoners escape. No doubt that was why he used the mace. In most instances, the use of mace under these circumstances might very well give rise to a valid claim against the parties. However, the trial court apparently believed the testimony of Shatzer, and on that basis, granted the summary judgment. Shatzer faced a dilemma. The way to solve such a problem is to have a second person on guard, so that mace need not be used. Certainly it does constitute excessive force under most circumstances.

In 1979, the United States Supreme Court, in *Bell v. Wolfish,* 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979), set out the standard to be applied in evaluating the constitutionality of conditions or restrictions of pretrial detention which bring about protection against deprivation of liberty without due process of law. The Court explained that "what *is* at stake when an aspect of pretrial detention that is not alleged to violate any express guarantee of the constitution is challenged, is the detain-

ee's right to be free from punishment." *Bell,* 441 U.S. 520, 534, 99 S.Ct. 1861, 1871, 60 L.Ed.2d 447 (1979).

Plaintiff has asked this court to find that the incident on January 3, 1979 violated his constitutional right to be free from cruel and unusual punishment under the Eighth Amendment. Although some circuit and district courts have in the past applied an Eighth Amendment test in the case of a pretrial detainee challenging conditions or disabilities of confinement, the Supreme Court in *Bell* and recently this court in *Littlefield v. Deland,* 641 F.2d 729 (10th Cir. 1981) declined to follow the Eighth Amendment analysis and announced that the test to be applied in the case of pretrial detainees is a due process clause standard. Action not dissimilar from that which was taken here was found to be reasonable in *Moss v. Ward,* 450 F.Supp. 591 (W.D.N.Y.1978). An inmate had obtained a piece of electrical conduit from the ceiling of a cell. After repeated unsuccessful demands by guards, which was the case here, to give the conduit to them, the inmate was gassed. The court granted defendant's motion for summary judgment with respect to plaintiff's cause of action which alleged a deprivation of his Eighth Amendment rights due to excessive gassing. The court ruled:

> The corrections officers attempted to obtain the pipe by talking to plaintiff before they gassed him, and warned plaintiff that he would be gassed if he did not turn it over. The only other means of obtaining the pipe would have been to enter the cell, and that could have led to physical contact between plaintiff and the guards. Under these circumstances the use of the particular force being applied was not unreasonable. Accord, *Beishir v. Swenson* [331 F.Supp. 1227], *supra.* See, *Collins v. Schoonfield,* 363 F.Supp. 1152 (D.Md.1973); *Holt v. Hutto, supra* [363 F.Supp. 194]. *See, also, Long v. Harris,* 332 F.Supp. 262, 270 (D.Kan.), *aff'd. per curiam,* 473 F.2d 1387 (10th Cir. 1971).

Id. at 598.

The case of *Lock v. Jenkins,* 641 F.2d 488 (7th Cir. 1981) is quite similar factually to the case at bar. The district court in that case found that a tray constituted a potential weapon. However, the court of appeals thought that although this fact was true, nothing in the record demonstrated how the tray could have been used as a weapon as long as the detainee was locked in his cell. On this issue the court concluded that "although we recognize that significant destruction of prison property by a person locked in a cell might justify the use of tear gas, we do not believe that the possible damage to the tray rises to that level." Id. at 496. The *Lock* court applied a due process analysis which is set forth in *Johnson v. Glick,* 481 F.2d 1028 (2d Cir. 1973), *cert. denied, Employee-Officer, John v. Johnson,* 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973). In *Johnson,* a pre-*Wolf* pretrial detainee decision, the detainee was physically assaulted by a prison guard. The court of appeals suggested that the following factors be considered in determining whether a constitutional violation has occurred:

> [A] court must look to such factors as the need for the application of force, the relationship between the need and the amount of force that was used, the extent of the injury inflicted, and whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.

481 F.2d at 1033.

Here, Shatzer's use of mace was minimal. He believed that the plaintiff had a heavy metal object which might have been used as a weapon. Moreover, he did not have an alternate course if he was to restore discipline. Furthermore, the task was the more complex because of the fact that he was on duty alone at the time of the incident.

We say again that we are not endorsing the use of mace. Far from it. We are merely saying that in this instance the amount of punishment did not reach a level which calls for treating it as violative of the Constitution.

One other factor, the destruction of prison property and possible escape of prison-

ers, was a greater matter here than in *Lock,* and the possibility of physical harm to other detainees was present since plaintiff was in the cell area with other detainees.

We have adhered to a policy deferring to prison administration principles in cases involving control and management of penal institutions. This includes the discipline, treatment and care of the persons confined. *See, e.g., Bethea v. Crouse,* 417 F.2d 504 (10th Cir. 1969). We also note that the Supreme Court in *Bell* stressed that "[i]n determining whether restrictions or conditions are reasonably related to the Government's interest in maintaining security and order and operating the institution in a manageable fashion, courts must heed [the] warning that '[s]uch considerations are peculiarly within the province and professional expertise of corrections officials,'" to whose judgment courts should defer. *Bell,* 441 U.S. at 540 n. 23, 99 S.Ct. at 1875 n. 23, quoting *Pell v. Procunier,* 417 U.S. 817, 827, 94 S.Ct. 2800, 2806, 41 L.Ed.2d 495 (1974). However, this policy does not mean that an individual is not to be heard or that the violation would remain unchecked when the treatment is excessive and the inmate is deprived of a constitutional right. This policy does not favor the use of chemical substances.

The record shows that macing might have been employed often at the Iron County Jail. It should not be used at any time, but in this instance we say the particular circumstances, including the action taken by Shatzer, did not rise to the level of constitutional violation. Since it did not, we do not reach the question of liability of the Sheriff and the County.

The judgment of the district court is affirmed.