John V. NORRIS, Appellant

v.

DISTRICT OF COLUMBIA, et al.

No. 83–1368.

United States Court of Appeals,
District of Columbia Circuit.

Argued Dec. 12, 1983.

Decided June 22, 1984.

James E. Doyle, Senior District Judge, sitting by designation, concurred and filed opinion.

St. John Barrett, Washington, D.C., for appellant. James H. Shelton, Greeley, Colo., also entered an appearance for appellant.

Edward E. Schwab, Asst. Corp. Counsel, Washington, D.C., with whom Judith W. Rogers, Corp. Counsel, Washington, D.C. (at the time the brief was filed), and Charles L. Reischel, Deputy Corp. Counsel, Washington, D.C., were on the brief, for appellees.

Before GINSBURG and BORK, Circuit Judges, and DOYLE,* Senior District Judge of the United States District Court for the Western District of Wisconsin.

Opinion for the Court filed by Circuit Judge GINSBURG.

Concurring opinion filed by Senior District Judge JAMES E. DOYLE.

GINSBURG, Circuit Judge:

Plaintiff-appellant Norris, a pretrial detainee at the District of Columbia Detention Facility ("D.C. Jail" or "the Jail"), brought suit for damages and injunctive relief against four correctional officers at the Jail, the acting Director of the District's Department of Corrections, the Mayor, and the District, alleging deprivation of his constitutional rights redressable under 42 U.S.C. § 1983.[1] Specifically, appellant

---

* Sitting by designation pursuant to 28 U.S.C. § 294(d).

1. That section provides:

alleged that on one occasion during his confinement in the D.C. Jail, appellee correctional officers, without provocation, maced, beat, and kicked him; the resulting injuries, Norris alleged, included temporary blindness, a burning sensation in his face, immediate pain which subsided after several hours, lingering blurred vision, and a bruised and swollen left arm. Pursuant to appellees' FED.R.CIV.P. 56 motion, the District Court dismissed Norris' complaint against the correctional officers on the ground that "[p]laintiff received medical attention promptly and suffered no permanent injuries."[2] Because the District Court erroneously stated and applied the legal standard governing section 1983 liability for prison officer batteries, we reverse its decision granting summary judgment to appellees and remand for further proceedings.

## I.

The events giving rise to appellant's complaint occurred either in the late evening of January 17, 1982, or in the early morning of January 18. As Norris described the incident, appellee correctional officers were

> mov[ing] me from the dormitory area of [one] cellblock ... to a single cell in the same cellblock. I was following their directions and I was not resisting. As I stepped into the single cell, [one of the appellees] sprayed mace on the right side of my face. At about the same time, the officers grabbed my arms from behind, handcuffed me, and began punching and kicking me and pushing me so that I banged into things in the cell. After this, they took me to the jail infirmary, where I was examined and treated.

Plaintiff's Response to Defendants' Interrogatories, No. 38 ("Plaintiff's Response No. ——"). Norris recounted that the pain he suffered as an immediate result of the beating subsided "after several hours." Plaintiff's Response No. 18. The mace spraying, he stated, produced burning in his "eyes, nose, throat and skin," blinded him "for about twenty minutes," and caused continuing "spells of blurred vision." Plaintiff's Response Nos. 11, 12. The residual effect of the kicking and punching, Norris reported, was a bruise on his left arm. Plaintiff's Response No. 11.

Norris' *in propria persona* complaint sought compensatory and punitive damages from the correctional officers allegedly involved in his beating. Subsequently, appellant's court-appointed counsel filed an amended complaint alleging, additionally, that the Mayor and the acting Director of the District of Columbia's Department of Corrections "fail[ed] and neglect[ed] ... adequately to supervise, train, instruct and control correctional officers at the District of Columbia Detention Facility in the performance of their duties [including the use of mace]." Amended Complaint at 3, 4. Supplementing Norris' initial prayer for relief, the complaint drawn by counsel sought to enjoin appellees from summarily punishing prisoners and to proscribe the issuance of mace to correctional officers at the Jail. *Id.* at 4, 5. Appellant then sought to discover from appellees, through interrogatories and a request for the production of documents, a description of all training given Jail personnel in the use of mace; all facility rules, regulations, and policies concerning the use of mace; and all complaints and reports related to the use of mace at the Jail. *See* Letter from St. John Barrett, Attorney for John V. Norris, to E. Huntington Deming, Assistant Corporation Counsel for the District of Columbia (Oct. 29, 1982).

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983 (Supp. V 1981).

**2.** Memorandum Opinion, Civil Action No. 82–1806, at 4 (D.D.C. Mar. 1, 1983). The District Court also dismissed Norris' claims against the District and its officials. *See infra* p. 1152.

Appellees did not answer Norris' discovery requests. Instead, they moved to dismiss the amended complaint or, in the alternative, for summary judgment. Norris had failed to state a claim upon which relief could be granted, appellees contended, both because the force visited upon him was in response to his refusal to comply peacefully with prison officers' directions and because "the alleged assault was of a minor nature resulting in pain for at most several hours and no permanent or significant injury." Memorandum in Support of Motion of Defendants to Dismiss Or, In the Alternative, For Summary Judgment, at 2, 4 ("Motion to Dismiss"). Further, the suit against the District and its officials must be dismissed, appellees argued, on the bases of *Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), and of qualified immunity. Motion to Dismiss at 6, 8.

The District Court, acknowledging its Rule 56(c) obligation to view the facts in a light most favorable to appellant, held that Norris had failed to state a claim for violation of his due process rights. The "preferable test" for determining the sufficiency of a due process claim based upon prison officer batteries, that Court declared, was "whether or not the conduct alleged 'shocks the conscience' or is otherwise offensive to the 'concept of ordered liberty.'" Memorandum Opinion, Civil Action No. 82-1806, at 3 (D.D.C. Mar. 1, 1983) ("Memorandum Opinion") (quoting *Baker v. McCollan,* 443 U.S. 137, 147, 99 S.Ct. 2689, 2696, 61 L.Ed.2d 433 (1979) (Blackmun, J., concurring), quoting, in turn, *Rochin v. California,* 342 U.S. 165, 172, 72 S.Ct. 205, 209, 96 L.Ed. 183 (1952) and *Palko v. Connecticut,* 302 U.S. 319, 325, 58 S.Ct. 149, 152, 82 L.Ed. 288 (1937)). Norris had not suffered "permanent injuries" in the "fracas," thus indicating that "little force was actually used," the District Judge stated. Memorandum Opinion at 3–5. The Court therefore ruled that appellant's claim did not assume constitutional proportions. Norris' section 1983 negligent supervision claim against the District and its officials fell along with the underlying due process claim. *Id.* at 5. The District Court also declined, on the basis of Norris' isolated allegation of abuse, to consider his plea concerning the use of mace at the Jail. *Id.* at 6.

## II.

The District Court's holding that permanent injury induced by conduct "shock[ing] the conscience" must be alleged to state a section 1983 claim based on prison officer battery misapprehends the governing law. The leading decision providing instruction for distinguishing a prison officer's constitutional due process violation from a common law assault and battery is *Johnson v. Glick,* 481 F.2d 1028 (2d Cir.), *cert. denied,* 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973). Judge Friendly there set out the following sensible guidelines, widely adopted by other courts confronting the issue:[3]

> In determining whether the constitutional line has been crossed, a court must look to such factors as the need for the application of force, the relationship between the need and the amount of force that was used, the extent of injury inflicted, and whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.

*Id.* at 1033. While "the extent of injury inflicted" is one criterion for determining whether a constitutional violation has occurred, Judge Friendly stated no threshold requirement of "permanent injuries" for section 1983 liability. *See Hodges v. Stanley,* 712 F.2d 34, 36 (2d Cir.1983) (per curiam) ("complaint ... alleg[ing] that the use of force was both gratuitous and excessive[,] under *Glick,* ... is enough to withstand dismissal"). Indeed, the plaintiff in

---

**3.** *E.g., Sampley v. Ruettgers,* 704 F.2d 491, 495–96 (10th Cir.1983); *Freeman v. Franzen,* 695 F.2d 485, 492 (7th Cir.1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 3553, 77 L.Ed.2d 1400 (1983); *Putman v. Gerloff,* 639 F.2d 415, 420 (8th Cir.1981); *King v. Blankenship,* 636 F.2d 70, 73 (4th Cir.1980); *Meredith v. Arizona,* 523 F.2d 481, 483 (9th Cir.1975).

*Johnson v. Glick* alleged no irremediable incapacitation.[4]

We have found no decisions supporting the District Court's severely restrictive interpretation of deprivations interdicted by the Due Process Clause.[5] Many courts have held that a claim is stated under section 1983 based on injuries no more debilitating than those alleged here. *See, e.g., Freeman v. Franzen,* 695 F.2d 485 (7th Cir.1982) (plaintiff kicked and hit many times by several guards; suffered no permanent injuries, but some lingering pain), *cert. denied,* —— U.S. ——, 103 S.Ct. 3553, 77 L.Ed.2d 1400 (1983); *King v. Blankenship,* 636 F.2d 70 (4th Cir.1980) (officer slapped plaintiff on head, knocked him down, ripped part of beard from his face, and kicked him); *Meredith v. Arizona,* 523 F.2d 481 (9th Cir.1975) (officer punched plaintiff in solar plexis rendering him "totally handicapped" momentarily and in need of four hours of oxygen therapy). Indeed, some courts have held macing in the face alone sufficiently severe to state a constitutional claim. *See Stringer v. Rowe,* 616 F.2d 993, 998–1000 (7th Cir.1980) (per curiam); *cf. Smith v. Iron County,* 692 F.2d 685, 686 (10th Cir.1982) (use of mace "constitute[s] excessive force under most circumstances," but not those present in this case). In general, courts have indicated that when a prison officer uses force that is "excessive," "undue," or "unjustified," plaintiff states a constitutional claim regardless of whether an injury of threshold severity and duration is alleged. *See, e.g., Putman v. Gerloff,* 639 F.2d 415, 420 (8th Cir.1981); *George v. Evans,* 633 F.2d 413, 416 (5th Cir.1980) (per curiam); *Bruce v. Wade,* 537 F.2d 850, 853 (5th Cir.1976).

The District Court's "prefer[red] test" for gauging constitutional violations apparently rested on *Rochin v. California's* "shocks the conscience" standard. *See* Memorandum Opinion at 3 (quoting *Rochin v. California,* 342 U.S. 165, 172, 72 S.Ct. 205, 209, 96 L.Ed. 183 (1952)). We regard *Rochin* as entirely consistent with *Johnson v. Glick's* guidelines for determining constitutional limitations on the use of force by prison officers; so did Judge Friendly—the author of *Johnson*—for in the very same paragraph in which he announced his widely-followed test, he stated that *Rochin* "points the way." *See* 481 F.2d at 1033. *Rochin,* and succeeding High Court decisions explicating its meaning,[6] all involved criminal defendant challenges to convictions obtained with the aid of arguably unconscionable evidence-gathering tactics. *Rochin* itself involved a defendant's successful challenge to a narcotics conviction obtained through the use of evidence retrieved by forcibly "stomach-pumping" the defendant. Thus, *Rochin* and progeny stand only for the limited principle that government action, even if taken pursuant to legitimate objectives such as evidence gathering, may not proceed via means "that shock[ ] the conscience." *See Rochin,* 342 U.S. at 172, 72 S.Ct. at 209.

Allegations of unprovoked, brutal beatings by correctional officers implicate a different prime concern. The application of force "maliciously and sadistically for the very purpose of causing harm," *Johnson v. Glick,* 481 F.2d at 1033, can serve no legitimate governmental objective. Heeding Judge Friendly's instruction to "look to ... the relationship between the need and the amount of force ... used," *id.,* courts have implicitly concluded that official force

---

**4.** The plaintiff in *Johnson v. Glick* alleged that he had "been having terrible pains in the head" since the beating. 481 F.2d at 1030. If this is what the District Court meant by "permanent injuries," Norris has alleged similar discomfort; he complains of lingering "spells of blurred vision." Plaintiff's Response No. 11.

**5.** *But cf. Sampley v. Ruettgers,* 704 F.2d 491, 495 (10th Cir.1983) (plaintiff must allege pain of "more than momentary discomfort; the attack must have resulted in *either* severe pain *or* a

lasting injury") (emphasis added) (footnote omitted).

**6.** *See Irvine v. California,* 347 U.S. 128, 74 S.Ct. 381, 98 L.Ed. 561 (1954) (electronic eavesdropping); *Breithaupt v. Abrams,* 352 U.S. 432, 77 S.Ct. 408, 1 L.Ed.2d 448 (1957) (extracted blood sample); *Schmerber v. California,* 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966) (same); *Hoffa v. United States,* 385 U.S. 293, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966) (informant infiltration).

directed towards illicit ends may offend the Constitution even though the same amount of force invoked in aid of legitimate official purposes would not. The gratuitous brutalization of prisoners is a proscribed governmental purpose; thus, less force oriented towards that end is needed to shock the judicial conscience than when a valid purpose, *e.g.*, maintaining prison order, is present.[7]

▪▪▪ In accord with numerous other courts, we hold that the amount of force required to state a constitutional claim for prison officer battery varies with the justification for that force.[8] We also agree with Judge Friendly, however, that minor "push[es] or shove[s]" in the prison setting, even if completely unprovoked, are not actionable under the Constitution. *See* 481 F.2d at 1033. But Norris has alleged far more: He claims, in essence, that four correctional officers, without cause and for malicious purposes, maced, beat, and kicked him, thereby causing substantial immediate pain as well as lingering ill effects. Such behavior by government officials, if proved, offends the Constitution regardless of whether permanent injuries result.

Because the District Court ruled that Norris had failed to state a constitutional claim against the correctional officers, it also dismissed his dependent negligent supervision claim against the District and its officials. Since we hold that appellant has stated a valid constitutional claim against the individual officers, we must reverse the District Court's dismissal of the negligent supervision claim as well.[9] The District

Judge also refused to investigate the use of mace at the Jail "[a]bsent allegations of other incidents involving mace or a shocking and offensive use of the substance." Memorandum Opinion at 6. However, Norris was stymied in his attempt to discover information bearing precisely on that point; the District Court's March 1, 1983, order granted, *nunc pro tunc*, defendants' motion to stay discovery. *See* Order, Civil Action No. 82–1806 (D.D.C. Mar. 1, 1983). Norris should be afforded an opportunity on remand to engage in reasonable discovery directed towards proving his allegations that the District has "failed adequately to supervise, train, instruct and control correctional officers at the [Jail] in the use of mace." Amended Complaint at 3.

For the reasons stated, the judgment of the District Court is reversed and the case is remanded with instructions to reinstate the complaint and for further proceedings consistent with this opinion.

*It is so ordered.*

JAMES E. DOYLE, Senior District Judge, concurring:

I agree the judgment of the district court must be reversed and the case remanded for further proceedings.

The interest of persons in the integrity of their bodies is a liberty interest of high order, within the meaning of the due process clauses of the fifth and fourteenth amendments. The order of this liberty interest is precisely as high among persons accused of crime as among persons unac-

---

7. Appellees dispute Norris' assertion that he was peacefully obeying the guards' instructions when beaten. *See* Brief for Appellees at 5 n. 7. The District Court made no finding regarding provocation; at this stage of the proceedings, it was not positioned to do so. Cases of allegedly unprovoked attacks by prison guards often produce widely disparate factual accounts, requiring courts to make credibility determinations rarely susceptible to summary judgment. *See, e.g., Freeman v. Franzen,* 695 F.2d 485 (7th Cir. 1982), *cert. denied,* — U.S. —, 103 S.Ct. 3553, 77 L.Ed.2d 1400 (1983); *Stringer v. Rowe,* 616 F.2d 993 (7th Cir.1980) (per curiam); *Aulds v. Foster,* 484 F.2d 945 (5th Cir.1973) (per curiam).

8. Thus, even when some force is justified, the Constitution may be offended if the force used grossly exceeds that warranted by the circumstances. *See, e.g., King v. Blankenship,* 636 F.2d 70 (4th Cir.1980).

9. The District Court did not address appellees' qualified immunity argument in rendering its decision, *see* Memorandum Opinion at 8; we leave that issue for the District Court's initial determination on remand. Similarly, we do not reach appellees' contention that municipal liability is precluded by *Monell v. Department of Social Servs.,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

cused of crime. The opinion of the district court implies that, constitutionally speaking, the order of this individual interest among persons accused of crime is to be considered significantly, not to say massively, lower than among persons unaccused of crime. I write separately to develop the view that recognition of the universality of this individual interest and of the uniformity of its importance among all persons is the key to adjudication of this case.

## I.

Because of ambiguity in the district court opinion as between Rule 12(b)(6) and Rule 56 motions, I begin with brief discussion of the amended complaint itself. It alleges explicitly: On January 17, 1982, while plaintiff was confined as a prisoner in the Detention Facility, defendants Green and Frizzell and two unnamed correctional officers sprayed mace in his face, handcuffed him and, while he was handcuffed, kicked him and beat him with their fists, all for the purpose of inflicting summary punishment upon him. As a result of the conduct of the four correctional officers, plaintiff was injured in his person in the amount of $20,000.

The amended complaint must be construed liberally to the plaintiff in response to a Rule 12(b)(6) motion, *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957), and thus to allege, as well, that: On January 17, 1982, plaintiff was being held as a pretrial detainee. The purpose of the defendant correctional officers was to punish plaintiff for the criminal offense stated in the charge on which he was being detained or for some alleged wrongdoing within the Facility in connection with the January 17, 1982 incident or earlier, or for both. No proceeding

had been held to determine his guilt or innocence of the underlying criminal charge or of wrongdoing within the Facility, or to determine whether macing and a physical beating would be appropriate punishment if guilt were proved. The physical injury to plaintiff was severe. The infliction of the injury was intentional and deliberate on the part of the defendant correctional officers or was performed with deliberate indifference to the consequences of their acts.

When counsel for defendant correctional officers Green and Frizzell moved under Fed.R.Civ.P. 12(b)(6) to dismiss this amended complaint for failure to state a claim upon which relief could be granted, they engaged in frivolity.[1]

It is a deprivation of liberty without due process of law to punish a pretrial detainee for the crime alleged in the charge on which she or he is being detained. *Bell v. Wolfish*, 441 U.S. 520, 536–537, 99 S.Ct. 1861, 1872–1873, 60 L.Ed.2d 447 (1979). Although a pretrial detainee is subject to appropriate punishment for violation of otherwise constitutional regulation of conduct within the detention facility, her or his liberty interest requires procedural due process of varying elaborateness, depending upon the severity of the potential punishment, before the punishment is imposed. *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). Thus, the amended complaint clearly states a claim against defendants Green and Frizzell under § 1983 upon which relief can be granted.

The district court neither granted nor denied the Rule 12(b)(6) motion to dismiss. Rather, it granted defendants' alternative Rule 56 motion for summary judgment.[2]

---

**1.** Misconduct on the part of four correctional officers was alleged in the complaint, but only Green and Frizzell were identified by name and served. Although there are disturbing passages in the district court's discussion of its reasons for granting summary judgment to the District of Columbia, Mayor Barry, and Director Holland, I confine this concurring opinion to the grant of summary judgment to Green and Frizzell.

**2.** The district court's order was accompanied by a memorandum opinion which confirms it was granting defendants' motion for summary judgment under Rule 56, rather than their alternative Rule 12(b)(6) motion to dismiss. Yet the memorandum opinion states that "the Court determines that plaintiff has failed to state a claim against the four correctional officers," "plaintiff failed to state a claim under the Constitution against the officers involved in the fracas," and

## II.

When counsel for Green and Frizzell elected, alternatively, to move for summary judgment, they knew the factual record in the case as it then stood. On the record as of that time, there was no genuine issue as to the following material facts:

As of late evening of January 17, or early morning of January 18, 1982, defendants were employed by and held the offices in the government of the District of Columbia described in the amended complaint. Plaintiff was a pretrial detainee in the Facility. Plaintiff was 37 years of age, was 5 feet 9½ inches in height, and weighed 145 pounds. Defendants Green and Frizzell and two unnamed correctional officers ordered and escorted plaintiff from a dormitory area in a cellblock to a certain single cell in the same cellblock of the Facility. Plaintiff was following their directions and not resisting. As plaintiff stepped into the single cell, defendant Green sprayed chemical mace on the right side of plaintiff's face. At about the same time, defendants Green and Frizzell and the other two correctional officers handcuffed plaintiff and began punching and kicking him so that he banged into things in the cell. Plaintiff was pulled from the cell and shoved by defendant Green to the Facility infirmary, where he was taken to a shower to wash the mace from his body, then to a medical examination area, and given Ben-Gay for a bruised swollen left arm. The mace burned plaintiff's eyes, nose, throat and skin; he was blinded for about 20 minutes and his eyes kept burning for several hours; after the burning stopped, he had spells of blurred vision; as of eleven months later, he had these spells when he read or watched TV, and the spells were not getting better. The kicking, punching and pushing hurt at the time. They left no bruises other than on plaintiff's left arm just above the elbow. The pain commenced immediately during the incident and ceased after several hours. Plaintiff was never confined to bed as a result of the injuries. No x-rays were taken. Plaintiff's health was excellent as of the time of the incident.

As against defendants' Rule 56 motion, these material facts constituted proven facts, as if a trial had occurred. They did not constitute "allegations" or "claims." They had been testified to by plaintiff, a competent witness, in his verified initial *pro se* complaint, which serves as an affidavit under Rule 56(e), and in his answers to defendants' interrogatories. Counsel for defendants disdained to offer factual materials in opposition, in the manner required by Rule 56.[3] They must have been

---

"plaintiff has failed to present [a claim within the judicial power of the United States] even with all inferences drawn in his favor ...."

Unfortunately, the majority opinion of this court is not expressed in Rule 56 language. It does not isolate the set of material facts of record as to which there is no genuine issue and then review the district court's determination that those facts entitle defendants to judgment on the merits, as a matter of law. Rather, it indulges frequently in the language of Rule 12(b)(6): "The preferable test for determining the sufficiency of a due process claim.... The District Court's holding that permanent injury induced by conduct 'shock[ing] the conscience' must be alleged to state a section 1983 claim.... Many courts have held that a claim is stated under section 1983 based on injuries no more debilitating than those alleged here.... Allegations of unprovoked, brutal beatings by correctional officers implicate.... [W]e hold that the amount of force required to state a constitutional claim for prison officer battery varies.... But Norris has alleged far more: He claims, in essence, that .... Such behavior by government officials, if proven .... Because the District Court ruled that Norris had failed to state a constitutional claim.... Since we hold that appellant has stated a valid constitutional claim...."

**3.** In a brief filed in the district court, counsel for defendants represented that: "The plaintiff had requested to be moved to a certain area of the facility, but it was explained to him that no cells were available there. Plaintiff then simply refused to move to an available cell, became abusive and violent, and resisted efforts to move him. Tear gas and physical force had to be used." This representation is unsworn and does not show affirmatively that the maker is competent to testify to these matters. Rule 56(e). The district court was bound, as we are, to treat the representation as a nullity.

aware, also, that even counter-affidavits by competent witnesses, to the effect that plaintiff provoked the use of force and the force was not excessive, would not have entitled defendants to summary judgment, because such allegations would have been at genuine issue by reason of plaintiff's sworn complaint and answers to interrogatories.

Most remarkably, defendants' motion for summary judgment was granted. The most sympathetic reading to be afforded the district court's opinion is that, in its view, the undisputed facts summarized above supported an inference, beyond genuine issue, of two further factual propositions: (1) there was justification for the use of force; and (2) the force used was not excessive.

(1) As to justification, the district court implies provocation by plaintiff. It refers to the incident as a "fracas," which is defined as a noisy quarrel, brawl, fight or altercation. WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (1971). There is no evidence whatever of provocation by plaintiff. The uncontradicted evidence is that plaintiff was following directions and not resisting. Also, apparently as justification for the use of force even in the absence of the slightest provocation, the district court refers to the need to prevent escape or other disturbances while moving prisoners from one cell to another. There is no evidence of physical layout or other circumstances bearing on escape or disturbances.

(2) As to non-excessiveness of the force used, assuming justification for some, the district court has inferred that "little force" was used. It bases this inference on separate findings that there had been a "lack of injury" and that plaintiff had "suffered no permanent injuries." Far from showing beyond genuine issue that there was a lack of injury, the present record shows beyond genuine issue that there was significant injury and "appreciable physical pain," *Ingraham v. Wright,* 430 U.S. 651,

675, 97 S.Ct. 1401, 1414, 51 L.Ed.2d 711 (1977); while permanence is not shown beyond genuine issue, its absence surely cannot be inferred, beyond genuine issue, from uncontradicted evidence of persistence of spells of blurred vision.

A less sympathetic and probably more accurate appraisal of the operative ground for the district court's decision is that made by the majority of this court: namely, summary judgment was awarded defendants simply because "[p]laintiff received medical attention promptly and suffered no permanent injuries."

### III.

Although there has been little articulation of its contours, the individual interest in bodily integrity has won high rank among those interests protected by the Constitution of the United States. *See, Williams v. United States,* 341 U.S. 97, 101–104, 71 S.Ct. 576, 579–580, 95 L.Ed. 774 (1951); *Screws v. United States,* 325 U.S. 91, 94, 65 S.Ct. 1031, 1032, 89 L.Ed. 1495 (1945); *Jenkins v. Averett,* 424 F.2d 1228, 1231–1232 (4th Cir.1970); *Collum v. Butler,* 421 F.2d 1257, 1259–1260 (7th Cir. 1970). Its constitutionally protected status has become so fixed and familiar as to be reflected in widely used model instructions for juries in federal courts. "The plaintiff had ... the liberty to be free from unlawful attacks upon the physical integrity of his person .... [T]he plaintiff ... had the right under the Federal Constitution not to be deprived of this ... liberty, involving the physical integrity of his person, 'without due process of law.'" 3 DEVITT AND BLACKMAR § 92.11 (3d ed. 1976 & Supp. 1984). *See also,* II FEDERAL CRIMINAL JURY INSTRUCTIONS OF THE SEVENTH CIRCUIT 28 (West 1984).[4]

In *Johnson v. Glick,* 481 F.2d 1028 (2d Cir.1973), *cert. denied sub nom. John v. Johnson,* 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973), upon which the district court here relied heavily, it was held that

---

**4.** The interest of an individual in the integrity of her or his body possesses a significance no less than metaphysical as "the most basic vehicle of

selfhood." Gerety, *Redefining Privacy,* 12 HARV. C.R.–C.L. REV. 233, 266–268 (1977); TRIBE, AMERICAN CONSTITUTIONAL LAW (1978) 913.

this interest in bodily integrity is a free-standing liberty interest within the meaning of the due process clause; that is, "quite apart from any 'specific' of the Bill of Rights, application of undue force by law enforcement officers deprives a suspect of liberty without due process of law." 481 F.2d at 1032.

In the world that lies beyond prisons and jails and as to persons unaccused of crime, it would be bizarre to suggest that the integrity of one's body enjoys no constitutional protection against deliberate and completely unjustified governmental invasion so long as medical attention is afforded promptly and the injuries prove impermanent. Of course, *de minimis* applies. Of course, injury beyond *de minimis*, but minor, may merit only a small sum as damages. But it would be unwise and impractical to attempt to define the perimeter of constitutional protection in terms of severity of the injury. The effect of such a quantitative severity test may be perceived if one hundred percent is thought to represent the total interest of any member of our society in her or his bodily integrity. Under a quantitative test, such as the district court undertook to apply in the present case, a substantial, deliberate and wholly unjustified diminution of that interest to, say, fifty percent or less could be effected by government without offense to the constitution.

There is a ready and realistic alternative to this bizarre quantitative method of defining the limit of constitutional protection. It is to define the limit in terms of the presence or absence of justification. If there is a complete absence of justification for the application of force, the intentional application of any force, beyond *de minimis*, is unconstitutional. Intentional application of that degree of force for which justification exists is constitutional. If the degree of force is unreasonable in response to the justification, the application of the excessive force is unconstitutional. The presence or absence of justification is the test. The degree of severity of the resulting injury is not.

IV.

If the bulk of the lawsuits seeking to vindicate constitutional protection of bodily integrity had arisen from the world that lies beyond prisons and jails and if they had been brought by persons unaccused of crime, I believe the courts would have readily embraced the viewpoint I have just expressed. I believe judicial resistance has arisen because so frequently it is prisoners who sue to vindicate constitutional protection of their bodily integrity and it is correctional personnel who are the alleged culprits. In *Johnson v. Glick*, the court seemed discomfited by its recognition of a liberty interest in bodily integrity among pretrial detainees and in the setting of a jail or prison, expressing anxiety about "considerable further expansion of actions by state prisoners under 42 U.S.C. § 1983," observing that prisoners are "not usually the most gentle or tractable of men and women," and remarking upon "the peace of a judge's chambers" as a distorting factor in the perception of the reality of life in prisons and jails. 481 F.2d at 1030, 1033. Similar intimations dot the opinion of the district court in the present case.

In *Johnson* this discomfiture with lawsuits by prisoners seems to have ignited an elaborate effort to draw a line between those intentional assaults and batteries by government which violate the constitution and those which violate the common law, but not the constitution. It was not unreasonable for the district court to draw from *Johnson v. Glick* a suggestion that in prisons and jails, unlike other places, a certain level of intentional and continual official violence, well beyond *de minimis*, lacking specific justification arising from particular sets of circumstances, is constitutionally acceptable. I understand the *Johnson v. Glick* concept to be that there is a universe of wrongful invasions of bodily integrity for which courts generally will afford relief to victims. Within that universe, there is a line to be drawn, defining a sector in which the invasions are committed by government. Within this sector of governmental

invasions, there is a line to be drawn, defining a sub-sector in which the unlawful governmental invasions violate the constitution. "[I]n determining whether the constitutional line has been crossed," *Johnson v. Glick* proposes looking

> to such factors as the need for the application of force, the relationship between the need and the amount of force that was used, the extent of injury inflicted, and whether the force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.

481 F.2d at 1033. As the majority opinion notes, these guidelines have been widely adopted by other courts. I do not share the majority's admiration for them. Taken in context of the discussion surrounding them, they have the potential for the very mischief exemplified in the case before us.

I agree that "the need for the application of force" and "the relationship between the need and the amount of force that was used" are the tests of the constitutionality of intentional governmental invasions of the bodily integrity of women and men, girls and boys. I agree that "the extent of injury inflicted" is probative of the amount of force used and that it bears on the sum to be awarded as damages. But, beyond *de minimis*, it is irrelevant to the issue of constitutionality.[5]

### V.

Plaintiff's version of the incident is known. From defense counsel's representations, it is probable that evidence will be offered that plaintiff was resisting a proper transfer from one place of confinement to another within the Facility and Green and Frizzell used only that force necessary to effect the transfer. If, on remand, this defense version is accepted by the fact-finder as the whole truth, a decision on the law should be simple enough. But it is realistic to suppose that some intermediate version

may be accepted as true: for example, that plaintiff resisted in some degree, Green and Frizzell responded with force in some degree, and the resulting injury was less than plaintiff alleges but more than defendants concede. Conflicting evidence may need be resolved whether the force applied to plaintiff was excessive and whether Green's and Frizzell's purpose was to punish summarily. If some such intermediate version of the facts is accepted as the whole truth, the district court will be in need of better guidance than *Johnson v. Glick* affords and, I fear, more explicit guidance than is to be found in the majority opinion.

I believe the district court should be instructed explicitly that, absent some immunity, the plaintiff is entitled to prevail against Green and Frizzell, on constitutional grounds, if he proves by a preponderance of the evidence that in the specific circumstances of the particular incident there was no justification for the application of force or if he proves that in those circumstances some force was justified but the force applied was excessive.

The district court should be instructed explicitly to abandon its effort to require a certain degree of severity of the resulting injury, beyond *de minimis*, as a condition to liability of Green and Frizzell under the constitution. It should be instructed explicitly that the importance of the interest of persons in their bodily integrity is uniform, in the eyes of the constitution. Pretrial detainees bleed when pricked. It is true that this uniformity can be honored whether the degree of importance assigned this interest among persons, generally, is high or low. It would be absurd, however, if, to thwart success in constitutional suits by persons accused of crime, a low order of importance was assigned this interest as among persons generally.

---

**5.** The inclusion of good faith, malice, and sadism is thoroughly confusing. They may be factors bearing on some kind of qualified immunity with a subjective component. They may bear on availability of punitive damages. But is it

suggested that the constitution condemns the application of force by government when none is justified or the application of excessive force, only in the absence of good faith and the presence of malice and sadism?

The just and workable approach is to focus on the justification for the application of force that may arise at a particular time and in a particular setting. Such a focus on the justification for the use of force rather than upon the nature and extent of the resulting injury has been the approach of the American Correctional Association in the promulgation of its STANDARDS FOR ADULT CORRECTIONAL INSTITUTIONS (2d ed. 1981),[6] and the American Bar Association in the promulgation of its STANDARDS FOR CRIMINAL JUSTICE Chapter 23 (Legal Status of Prisoners) (1981).[7] It has been suggested that justifications may be grouped into: those shared by correctional officers with all persons, such as self-defense; those shared with peace officers acting outside prisons and jails, such as prevention of commission of a crime; and those peculiar to the prison setting, such as regaining control of a part of an institution after an inmate takeover. Gobert & Cohen, RIGHTS OF PRISONERS 322–324 (1981 and supp.1983).

Depending upon how the facts are found on remand in the present case, it may become of practical importance to explore the presence or absence of justification for the application of force affirmatively to compel compliance with rules and regulations. *Id.* at 324; A.B.A. STANDARDS, *supra,* commentary to 23–6.12, p. 23–120. Such applications are uncommon outside prisons and jails, but they occur, for example, and probably justifiably at times, when law enforcement officers must control crowds at parades, athletic events, demonstrations, and so on. The question is not easy. In the initial draft of the A.B.A. STANDARDS, it was provided: "Force should not be used to physically compel compliance with rules or regulations ...." Joint Committee on the Legal Status of Prisoners, TENTATIVE DRAFT OF STANDARDS RELATING TO THE LEGAL STATUS OF PRISONERS § 6.11(b)(iii) (1977). However, this provision was deleted.

It is difficult to discern whether focus upon justification for the use of force rather than upon severity and duration of resulting physical injury would affect the volume of constitutional lawsuits by persons alleging deprivation of their liberty interest in bodily integrity without due process. Under either focus, complaints could readily survive Rule 12(b)(6) motions to dismiss. It is possible, but far from certain, that if the focus were on the severity and duration of injury, a larger share might be amenable to summary judgment in favor of defendant correctional officers.

Obviously, it will be prisoners who will continue to make many such constitutional claims. The reality is that the incidence of direct applications of governmental force is markedly higher in prisons than outside prisons. It is probable that justification for the use of force will be found, properly, more frequently in cases arising in prisons than in those arising elsewhere. "The relationship of state prisoners and the state officers who supervise their confinement is far more intimate than that of a State and a private citizen." *Preiser v. Rodriquez,* 411 U.S. 475, 492, 93 S.Ct. 1827, 1837, 36 L.Ed.2d 439 (1973). "Prison is, after all, the largest power that the state exercises in practice, on a regular basis, over its citizens ...." MORRIS, THE FUTURE OF IMPRISONMENT 2 (1974). "Openness" and "supervision by the community" do not mark life within prisons, as the Court has found them to mark life in the public schools. *Ingraham v. Wright,* 430 U.S. 651, 670, 97 S.Ct. 1401, 1412, 51 L.Ed.2d 711 (1977). It is neither surprising nor unwarranted that the courts are required frequently to consider, deliberately and respectfully, allegations that in the prisons the constitutional limit on the power of government has been exceeded.

---

**6.** *See* sections 2–4097, 4098, 4185, 4186, 4191, 4206, 4341.

**7.** *See* standard 23–6.12.