**Alonzo Theodore JAMES, Jr., Plaintiff,**

v.

**DISTRICT OF COLUMBIA, et al., Defendants.**

Civ. A. No. 83–0243.

United States District Court, District of Columbia.

June 12, 1985.

David J. Rothwell, Washington, D.C., for plaintiff.

Roberta L. Gross, Asst. Corp. Counsel, Washington, D.C., for defendants.

## MEMORANDUM AND ORDER

JACKSON, District Judge.

Plaintiff Alonzo James complains that he was assaulted and beaten by an officer of the Washington, D.C., Metropolitan Police Department ("MPD") in the course of his allegedly illegal arrest for larceny in January of 1982, from which he received both transient injuries and permanent loss of hearing in his right ear secondary to the concussion of a gunshot report. He demands compensatory and punitive damages from the District of Columbia, its Chief of Police, the offending police officer, and the officer's Precinct Captain, on various theories, both compatible with and alternative to one another.

The case has proceeded through the discovery and pretrial conference stages, and is now awaiting jury trial. Upon the record as developed through discovery, however, all defendants have moved to dismiss or for summary judgment. For the reasons hereinafter set forth, the motions must be denied.

I.

All parties acknowledge that most of the facts, material and otherwise, remain very much in dispute. From those few which are not, however, it appears that at approximately 2:30 p.m., January 29, 1982, police received a telephone report from a private citizen of several individuals observed tampering with a parked automobile in the 4900 block of Ames Street, N.E. Shortly thereafter defendant MPD Officer Lewis White, responding, encountered plaintiff James in the 400 block of 51st street, N.E., in circumstances leading White to suspect him of criminal activity. An altercation ensued, in the course of which Officer White's service revolver discharged in close proximity to James' right ear. James was taken into custody, physically restrained, transported to MPD Sixth District Headquarters (and thereafter to D.C. General Hospital for emergency room treatment), and released later the same day. The larceny charges lodged against him were reduced from a felony to a misdemeanor and later dismissed.

James alleges that while engaged in innocent conversation with "acquaintances" on the street near his home, he was accosted by Officer White, dressed in dishevelled civilian clothes and giving signs of inebriation, and questioned about an automobile tire in his possession. Apparently dissatisfied with plaintiff's response, according to James, White "grabbed" him, and then placed his hand on his service revolver and threatened to make James "another statistic." Next he drew the revolver and menaced James with it (although James, standing motionless, with his hands raised above his head, gave no provocation) and, without warning, struck him "repeatedly in his mouth and head" with the gun. The gun discharged during the beating, James alleges, and he was "bleeding profusely from his mouth, ear and head" by the time other police officers arrived to assist in "pushing" him into a police cruiser.

Officer White, however, asserts that he encountered James and several others gathered about a truck bearing the license tags of the one reported to have been used by the automobile tamperers on Ames Street. He approached James first, because James was unloading a tire from the truck. His inquiries about the tire elicited "inconsistent responses," and the others, informed by White that he wanted to take them all to Ames Street to be seen by witnesses there, "fled" separately. As White radioed for assistance James, too, began to "flee," ignored an order to stop despite White's drawn gun, and "became belligerent" as White overtook and attempted to restrain him, revolver still in hand. In the course of the struggle, White admits, he did strike James on the head with the gun, and the gun did discharge.

## II.

The complaint charges common law torts of assault and battery, false arrest, false imprisonment, intentional infliction of emotional distress, and negligence. It also alleges constitutional torts under the Fourth, Fifth, Sixth, and Eighth Amendments to the U.S. Constitution and civil rights violations under 42 U.S.C. § 1983. Defendants realize that, were the case pending in D.C. Superior Court, at this stage of the case summary judgment on at least the common law claims would probably be foreclosed by the uncertain state of the evidence.[1] Since, however, the jurisdiction of this Court rests entirely upon the claims based upon federal law,[2] i.e., the constitutional torts and civil rights deprivations alleged, there being no other apparent source of federal subject matter jurisdiction, defendants contend that even the most charitable view of plaintiff's case does not permit a federal cause of action to be discerned, and with the demise of the federal claims, the common law claims are no longer "pendent" to anything and should also be dismissed. *See Financial General Bankshares, Inc. v.*

*Metzger,* 680 F.2d 768, 772 (D.C.Cir.1982); *Network Project v. Corporation for Public Broadcasting,* 561 F.2d 963, 970 (D.C. Cir.1977), *cert. denied,* 434 U.S. 1068, 98 S.Ct. 1247, 55 L.Ed.2d 770 (1978). Alternatively, defendants say, they are entitled to summary judgments of dismissal on the basis of various affirmative defenses in the nature of confession and avoidance: qualified immunity for the police officials, and absence of statutory notice as to the District.

Not every actionable assault by a police officer upon a citizen, of course, becomes a constitutional tort or a § 1983 violation solely by virtue of the identities of tortfeasor and victim. *See generally, Screws v. U.S.,* 325 U.S. 91, 65 S.Ct. 1031, 89 L.Ed. 1495 (1945). Nevertheless, when such an assault occurs in circumstances in which the participants confront one another as policeman and suspect, multiple subtle, and quintessentially factual, distinctions determine "whether the constitutional line has been crossed" and make it particularly insusceptible to summary disposition. *Norris v. District of Columbia,* 737 F.2d 1148, 1150–51 (D.C.Cir.1984).

It may well be that if the incident giving rise to this action is no more fully developed at the close of plaintiff's evidence than it is at present, defendants will obtain by jury verdict what they now seek by way of dismissal on jurisdictional grounds in advance of trial. The more likely interpretation of the events of January 29, 1982, on the present record would make it appear a street brawl or a forcible arrest (depending upon the version credited), without constitutional implications. But it may also bear the construction plaintiff puts upon it, *viz.,* Officer White's extemporaneous attempt at summary punishment of a criminal suspect. And if it remains ambiguous at the end of the case, it is nevertheless for the jury to give it definitive meaning, unless even the *prima facie* proof fails to materialize.

**1.** *See Norris v. District of Columbia,* 737 F.2d 1148, 1150 (D.C.Cir.1984); *United States v. Diebold,* 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962).

**2.** 28 U.S.C. §§ 1331 and 1343(a)(3) are alleged as the sources of federal jurisdiction.

## III.

As for the common law claims, it is well-established that the District of Columbia may be liable on a theory of *respondeat superior* for common law torts committed by its agents acting within the course and scope of their employment. *See, e.g., District of Columbia v. White,* 442 A.2d 159, 162 (D.C.1982); *District of Columbia v. Davis,* 386 A.2d 1195, 1202 (D.C.1978). *See also, Wade v. District of Columbia,* 310 A.2d 857 (D.C.1973); *Carter v. Carlson,* 447 F.2d 358 (D.C.Cir.1971), *rev'd on other grounds,* 409 U.S. 418, 93 S.Ct. 602, 34 L.Ed.2d 613 (1973). And the imposition of vicarious liability upon the principal does not absolve the agents of the consequences of their own unlawful acts. *Clark v. Atlantic Coast Line R.R.,* 244 F.2d 368, 372–73 (D.C.Cir.1957).[3]

There is evidence upon which negligence (or worse) could be found on the part of each of the individual defendants for which the District could be vicariously, and the individual defendants directly, liable to plaintiff. Whether the evidence will be sufficient to take the case to the jury on the issues of culpable municipal apathy or the senior officers' failure to train or supervise—the theories upon which plaintiff is proceeding against defendants other than White—is, once again, largely dependent upon how the facts develop at trial.[4] As the Second Circuit has noted:

> . . . [W]here senior personnel have knowledge of a pattern of constitutionally offensive acts by their subordinates but failed to take remedial steps, the municipality may be held liable for a subsequent violation if the superior's inaction amounts to deliberate indifference or to tacit authorization of the offensive acts. Although that standard is undoubtedly difficult to meet, we cannot say as a matter of law that failure to act may never give rise to an official policy within the meaning of *Monell.*

*Turpin v. Mailet,* 619 F.2d 196, 201 (2d Cir.), *cert. denied,* 449 U.S. 1016, 101 S.Ct. 577, 66 L.Ed.2d 475 (1980). The fact that neither defendants Collins nor Turner were in their respective supervisory positions at the time of earlier incidents involving Officer White's misuse of his service revolver is irrelevant if, as plaintiff contends, in 1982 they failed in a duty to acquaint themselves with his record and take the appropriate steps to protect the public from a rogue police officer. The issue is, in any event, to be determined by the jury. *See Sims v. Adams,* 537 F.2d 829, 831–32 (5th Cir.1976).

---

3. On the other hand, it is now also settled that a municipality cannot be held liable under section 1983 solely on a theory of *respondeat superior. Monell v. New York City Department of Social Service,* 436 U.S. 658, 691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978). And it is probable that more than simple negligence is necessary to a finding of liability on both constitutional and common law claims against defendants District of Columbia, Turner and Collins. *See Languirand v. Hayden,* 717 F.2d 220, 227–28 (5th Cir.), *reh'g denied,* 721 F.2d 819 (5th Cir.1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 2656, 81 L.Ed.2d 363 (1984); *Hays v. Jefferson County, Ky.,* 668 F.2d 869, 874 (6th Cir.), *cert. denied,* 459 U.S. 833, 103 S.Ct. 75, 74 L.Ed.2d 73 (1982); *Turpin v. Mailet,* 619 F.2d 196, 202 (2nd Cir.), *cert. denied,* 449 U.S. 1016, 101 S.Ct. 577, 66 L.Ed.2d 475 (1980); *McClelland v. Facteau,* 610 F.2d 693, 697 (10th Cir. 1979). *Compare Carter v. Carlson,* 447 F.2d 358, 369 (D.C.Cir.1971), *rev'd on other grounds,* 409 U.S. 418, 93 S.Ct. 602, 34 L.Ed.2d 613 (1973). *Carter,* however, predates the Supreme Court's holdings in both *Rizzo v. Goode,* 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976)

and *Monell, supra. See Hays, supra,* 668 F.2d at 873 & n. 2.

4. It is undisputed that Officer White had been involved in earlier incidents in which his weapon discharged and he was subsequently found to have violated MPD policies in connection with it. In December, 1976, White went to the home of a former girlfriend, drew his service revolver and forcibly entered the apartment, then struggled with a man found inside the apartment during which the revolver discharged. In the wake of an investigation, White was recommended for removal from the MPD, but following appeal, a fine was imposed in lieu. Again while off duty, in July, 1979, White discharged one round from his revolver into the wall of his apartment but failed to notify authorities.

White has also been cited for conduct unbecoming an officer; for less-than-satisfactory conduct while on duty; and for absences without leave, tardiness, abuse of sick leave, and unauthorized departure from his assigned areas of duty.

The District also argues that plaintiff's claims based on its alleged negligent supervision, training and discipline of its police officers must be dismissed as a result of plaintiff's failure to comply with the notice requirements of D.C.Code § 12–309.[5] In *Pitts v. District of Columbia*, 391 A.2d 803, 809 (D.C.1978), however, the D.C. Court of Appeals held that failure to give formal statutory notice does not automatically lead to dismissal, and that the particular facts of a case, including the nature of such reports as *were* received, must be weighed against the statutory objective, i.e., timely notice to the District to enable it to protect itself against groundless suits and ascertain the facts of those of substance before evidence is lost. *See also, Braxton v. National Capital Housing Authority*, 396 A.2d 215 (D.C.1978).

In the instant case the police had in hand a completed "Arrestee's Injury or Illness Report and Request for Examination and Treatment" as of the night of plaintiff's arrest. They also shortly acquired witnesses' statements regarding Officer White's conduct and the police report of the arrest itself, and, ultimately, obtained the results of the police department investigation which officially found White guilty of using excessive force and improperly handling his service revolver. The District thus was fully apprised in ample time of all it needed to know to anticipate and prepare to defend against an obviously substantial claim. Formal notice from James or his lawyer would have been superfluous.[6]

It is, therefore, for the foregoing reasons, this 22nd day of May, 1985,

ORDERED, that defendant Lewis White's motion for summary judgment is denied; and it is

FURTHER ORDERED, that the motions of defendants District of Columbia, John Collins, and Maurice Turner to dismiss or, in the alternative, for summary judgment of dismissal are denied.

---

5. D.C.Code § 12–309 provides, in pertinent part:
   An action may not be maintained against the District of Columbia for unliquidated damages to person or property unless, within six months after the injury or damage was sustained, the claimant, his agent, or attorney, has given notice in writing to the ... District of Columbia of the approximate time, place, cause, and circumstances of the injury or damage. *A report in writing by the Metropolitan Police Department, in regular course of duty, is a sufficient notice under this section.* (Emphasis added).

6. The many cases cited by defendant District of Columbia as examples of the inadequacy of police reports for purposes of § 12–309 are inapposite. In each the reports were deficient in the description of the circumstances surrounding the critical incident. *See, e.g., Brown v. District of Columbia*, 304 A.2d 292, 293 (D.C.1973); *Miller v. Spencer*, 330 A.2d 250 (D.C.1974). *Compare Pitts, supra*, 391 A.2d at 809; *see also, Thomas v. Potomac Electric Power Co.*, 266 F.Supp. 687, 694 (D.D.C.1967); *Rieser v. District of Columbia*, 563 F.2d 462, 477 (D.C.Cir.1977).