Mark J. FOURNIER, Plaintiff, Appellee,

v.

Charles REARDON, Etc., et al.,
Defendants, Appellants.

No. 98–1316.

United States Court of Appeals,
First Circuit.

Heard Sept. 11, 1998.

Decided Nov. 10, 1998.

William P. Breen, Jr., with whom John J. Davis and Morrison, Mahoney & Miller were on brief, for appellants.

Thomas C. Regan, with whom Pearl, McNiff, Crean, Cook & Sheehan was on brief, for appellee.

Before TORRUELLA, Chief Judge, BOUDIN and STAHL, Circuit Judges.

TORRUELLA, Chief Judge.

Defendant-appellants appeal the final order and judgment denying the defendants' motion to dismiss. Plaintiff-appellee, Mark J. Fournier ("Fournier"), claims that he is entitled to monetary damages for personal injuries allegedly sustained as a result of the defendants' alleged deprivation of his rights under the Fourth and Fourteenth Amendments. Fournier asserts that the defendants are liable under the Federal Civil Rights Act, 42 U.S.C. § 1983, and under the Massachusetts Civil Rights Act, Mass. Gen. Laws ch. 12, § 11I. For the following reasons, we reverse.

## BACKGROUND

Fournier was employed by the Essex County Sheriff's Department as a corrections officer for more than ten years prior to entering a basic training academy ("academy") run by the Essex County Sheriff's Department. On May 1, 1995, Fournier and twenty other corrections officers began attending a nine week basic training course which the

Essex County Sheriff's Department required for full-time employment. The academy was staffed by other Essex County Sheriff's Department corrections officers. It offered both classroom and physical training such as standing at attention, instruction as to chain of command, and protocol in interacting with superior officers.

On the second day of the course, Fournier was ordered to report to the academy training staff's office. Protocol taught and enforced at the academy required that Fournier, an academy recruit: (1) knock outside the instructors' office door; (2) announce his presence; and (3) request permission to enter before entering the instructors' office. Fournier breached academy protocol when he failed to follow this regimented procedure and entered the office unannounced.

To punish Fournier for violating academy protocol, one of the drill instructors present in the room ordered Fournier to turn around and bend over. When Fournier complied, the drill instructor placed handcuffs on his wrists and informed Fournier that he was being placed under "house arrest" for entering the instructors' office without having requested permission. The drill instructor then allegedly put Fournier's written reports in his mouth and ordered him to return to the classroom. The other drill instructors in the room failed to intervene on Fournier's behalf.

Fournier returned, in handcuffs, to the classroom. Within five minutes of the "house arrest," the drill instructor entered the classroom. Pursuant to academy protocol, the recruits rose to attention upon the entrance of a superior officer. When the drill instructor ordered the class to be seated, Fournier attempted to seat himself. Unfortunately, Fournier missed his chair and fell to the ground, allegedly sustaining serious personal injuries, including a fractured vertebra.

## DISCUSSION

### I. Standard of Review

Although most denials of motions to dismiss are not "final decisions," and thus are not independently appealable, a district court's rejection of a qualified immunity defense is a "final decision," *Mitchell v. Forsyth*, 472 U.S. 511, 528, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985), and thus we review it here. Because "[a] necessary concomitant to the determination of whether the constitutional right asserted by a plaintiff is 'clearly established' at the time the defendant acted is the determination of whether the plaintiff has asserted a violation of a constitutional right at all," *Siegert v. Gilley*, 500 U.S. 226, 232, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991), we will consider whether Fournier has asserted a violation of any constitutional right in his complaint.

### II. Section 1983 Claims

Section 1983 states, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws shall be liable to the party injured in any action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. "[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights conferred.'" *Graham v. Connor*, 490 U.S. 386, 393–94, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n. 3, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979)). "To succeed, a section 1983 plaintiff must show a violation of a right secured by federal law." *Skinner v. City of Miami*, 62 F.3d 344, 346 (11th Cir.1995).

Fournier claims three separate constitutional violations:. (1) a violation of his Fourth Amendment rights; (2) a violation of his right to due process under the Fourteenth Amendment; and (3) a violation of his right to equal protection of the laws under the Fourteenth Amendment. None of his arguments is persuasive.

### A. Fourth Amendment

The Fourth Amendment provides that "[t]he right of the people to be secure

... against unreasonable ... seizures, shall not be violated." U.S. Const. amend. IV. Under the *Mendenhall* test, formulated by Justice Stewart in *United States v. Mendenhall*, 446 U.S. 544, 554, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980), and adopted by the United States Supreme Court in later cases, *see Michigan v. Chesternut*, 486 U.S. 567, 573, 108 S.Ct. 1975, 100 L.Ed.2d 565 (1988): "[A] person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *Mendenhall*, 446 U.S. at 554, 100 S.Ct. 1870.

██ Fournier argues that when the drill instructor placed him under "house arrest" and handcuffed him behind his back, he was seized for purposes of Fourth Amendment analysis. We disagree. Under the *Mendenhall* test, a court must look at all the circumstances surrounding the incident to determine if a reasonable observer would have believed that Fournier was not free to leave.

Although Fournier was handcuffed, no evidence presented would support a finding that he was not free to leave at any point during the scenario. Fournier understood that "house arrest" was part of the basic training academy course. He submitted to being handcuffed, and then returned to the classroom. We grant that if he did object to being handcuffed, there could possibly have been negative consequences for his continued employment as a corrections officer. However, the possible effect that refusing to be handcuffed may have had on his employment status is not an issue for us to consider. Rather, the question is whether a violation of Fournier's right to be free from seizure occurred. In view of all the circumstances surrounding the incident, a reasonable observer would conclude that Fournier was the subject of improper hazing, which might give rise to a state law claim based on tort or employment theories, but would not believe that Fournier was not free to call an end to the "house arrest" and have the handcuffs removed.

1. The statue provides:

## B. Fourteenth Amendment Due Process Claims

██ The Fourteenth Amendment states that a "State [shall not] deprive any person of life, liberty, or property, without due process of law...." U.S. Const. amend. XIV. Due process claims may take either of two forms: "procedural due process" or "substantive due process." *Pittsley v. Warish*, 927 F.2d 3, 6 (1st Cir.1991). Procedural due process requires that the procedures provided by the state in effecting the deprivation of life, liberty or property are adequate in light of the affected interest. *Id.* Substantive due process, however, imposes limits on what a state may do regardless of what procedural protection is provided. *Id.* (citing *Monroe v. Pape*, 365 U.S. 167, 171–72, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961); *Rochin v. California*, 342 U.S. 165, 169, 72 S.Ct. 205, 96 L.Ed. 183 (1952)). In this case, Fournier invokes the latter prong of due process protection: (1) by arguing that he had a constitutionally protected liberty interest in being disciplined only as set forth in the Essex County Sheriff's Department Training Manual; and (2) by contending that the county owed him and others similarly situated a constitutional right to safe conditions and freedom from bodily restraint.

### 1. Disciplinary Procedure Due Process Claim

██ It is well established that a state actor's failure to observe a duty imposed by state law, standing alone, is not sufficient to establish a § 1983 claim. *See Martinez v. Colon*, 54 F.3d 980, 989 (1st Cir.1995). Although it is true that constitutional significance may attach to certain interests created by state law, not every transgression of state law does double duty as a constitutional violation. *Id.* As this Court stated in *Martinez*: "[T]he Constitution is not an empty ledger awaiting the entry of an aggrieved litigant's recitation of alleged state law violations...." *Id.*

██ Fournier cites Massachusetts law, *see* Mass. Gen. Laws ch. 265, § 40,[1] and

Whoever, having the direct management or direct control over the conduct of physical

departmental regulations which govern the discipline of recruits in training programs, to found his claim of a § 1983 violation. However, whether Massachusetts law was violated or the department failed to follow its own disciplinary procedures matters little because neither alleged deficiency establishes a § 1983 violation.

### 2. Affirmative Obligation Due Process Claim

The substantive element of the Due Process Clause protects those rights that are fundamental, rights that are "implicit in the concept of ordered liberty." *Palko v. Connecticut*, 302 U.S. 319, 325, 58 S.Ct. 149, 82 L.Ed. 288 (1937). The Supreme Court has deemed that most, but not all, of the rights enumerated in the Bill of Rights are fundamental. In addition, certain unenumerated rights, such as the right to privacy, are deemed fundamental.

While the Supreme Court has extended substantive due process protection to certain unenumerated rights, it has not extended Fourteenth Amendment coverage to many areas. "Tort law is one such area that remains largely outside substantive due process jurisprudence." *Skinner*, 62 F.3d at 346 (citing *Daniels v. Williams*, 474 U.S. 327, 332, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986) (noting that the Due Process Clause "does not purport to supplant traditional tort law in laying down rules of conduct to regulate liability for injuries that attend living together in society")) (citations omitted).

Fournier contends that there is a constitutional right to safe conditions. *But see DeShaney v. Winnebago County Department of Social Services*, 489 U.S. 189, 195, 202, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989) ("The Clause is phrased as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security.... A State may, through its courts and

legislatures, impose such affirmative duties of care and protection upon its agents as it wishes. But not 'all common-law duties owed by government actors were … constitutionalized by the Fourteenth Amendment.' ") (quoting *Daniels*, 474 U.S. at 335, 106 S.Ct. 662). Second, Fournier claims his constitutional right to freedom from bodily restraint was violated when he was handcuffed. As discussed above, Fournier's "house arrest" does not rise to the level of a constitutional violation. *See supra*, at 756–57. Fournier's Complaint attempts to conflate an ordinary tort—battery—into a constitutional violation. Unfortunately for his cause, not everything is a federal case.

### 3. Equal Protection Clause Claim

In a novel, yet utterly misguided attempt at an Equal Protection Clause claim, Fournier contends: "[The drill instructor] placed the plaintiff under house arrest because of the plaintiff's conduct as a recruit. It is fair to infer that … [the drill instructor] would not have placed a non-recruit under house arrest for similar conduct." Appellee's Br. at 13. We do not find that such a distinction rises to the level of an Equal Protection violation.

### CONCLUSION

Because Fournier has not been able to show a violation of a federal right, it is not necessary for this Court to reach the defense of qualified immunity. For the reasons stated in this opinion, we reverse the judgment of the district court. Judgment is issued for the defendant-appellants.

exercise as part of a course of study or training program at any public or private institution, agency or entity, willfully, wantonly and recklessly causes serious bodily injury to a person participating in a course of study or training program involving physical exercise, shall be punished by a fine of not more than five thousand dollars or by imprisonment in a jail or

house of correction for not more than two and one-half years or both.

For the purposes of this section "serious bodily injury" shall mean bodily injury which creates a substantial risk of death or which involves either total disability or the loss or substantial impairment of some bodily function for a substantial period of time.